IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CARL BURNS                          §
                                    §
VS.                                 §     CIVIL ACTION NO.4:09-CV-639-Y
                                    §
                                    §
CHASTITY L. CARABAJAL, et al.       §

OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AS TO
DEFENDANT CHASTITY L. CARABAJAL and, DENYING MOTION
FOR SUMMARY JUDGMENT AS TO DEFENDANT KENNETH N. KNOOP

Plaintiff Carl Burns has claims remaining against individual
defendants Chastity L. Carabajal and Kenneth N. Knoop.[1]  Pending
before the Court is a combined motion for summary judgment of both
defendants, along with a brief in support, an appendix, and a
supplement to the appendix. By the motion for summary judgment, the
defendants argue that there are no genuine disputes of material
fact related to whether plaintiff Burns, then an inmate at the
Mineral Wells Pre-Parole transfer facility, was subjected to a
violation of his Eighth Amendment rights when he was not protected
from a violent attack at the hands of his fellow prisoners. Burns
filed a response to the motion for summary judgment, with a
supporting affidavit, his deposition, and volumes of record
evidence.  The defendants did not file a reply. For the reasons set
forth herein, the Court concludes that Carabajal's motion for
summary judgment must be granted, but that because there are
genuine disputes of material fact as to defendant Knoop, his motion

_____

[1]All other claims and defendants have been dismissed under authority of 28
U.S.C. §§ 1915A and 1915(e)(2)(B).

for summary judgment must be denied.

*Summary-Judgment Evidence*

Defendants have filed an appendix in support of the motion for summary judgment that includes: the affidavit of Kristen W. Kelly, an attorney for defendants, along with portions of the November 5, 2010, deposition of plaintiff Burns (Appendix 1-26); the affidavit of Crystal S. Austin, along with copies of an "Employee/Civilian Incident Statement" written by Austin on June 6, 2008 (Appendix 27-32); the affidavit of Kenneth N. Knoop (Appendix 33-35); the affidavit of Mineral Wells Transfer facility records custodian Desiree Zabinsky,[2] along with the June 2008, Time Card for Chastity Carabajal (Appendix 36-37); and the affidavit of Chastity L. Carabajal. Burns filed a first amended[3] response to the combined motion for summary judgment, accompanied by an appendix which includes: the affidavit of Carl Burns (Exhibit A-1); multiple records of the Mineral Wells transfer facility (Exhibit A, pages 1-64); letters to Burns from the State of Texas Special Prosecution Unit (Exhibits B-D); sixty-four pages of medical records of Harris Hospital Methodist--Fort Worth (Exhibit E); the 140-page November 5, 2010, deposition of Burns (Exhibit F); and nine exhibits to the deposition of Burns (Exhibits F1-F9).

---

[2]Although the initial Zabinsky affidavit was not notarized, Defendants submitted a supplement to the Appendix containing a notarized version of her affidavit.

[3]Burns's amended response and appendix thereto is the same as the initial response and appendix, except for the addition of a complete copy of Burns's November 5, 2010, deposition.

*Summary-Judgment Standard*

Summary judgment is appropriate when the record establishes "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."[4]  The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence that tends to show that no genuine dispute as to any material fact exists and that he is entitled to judgment as a matter of law.[5]  Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine dispute for trial.[6] Whether a dispute is "genuine" is a determination of whether it is "real and substantial, as opposed to merely formal, pretended, or a sham."[7] A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.[8] No genuine dispute of material fact exists if no rational trier of fact could find for the nonmoving party based on the evidence presented.[9]  The

---

[4]Fed. R. Civ. P. 56(a).

[5]*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*  477 U.S. 242, 248 (1986).

[6] *Id.*, at 322-23; *Anderson,* 477 U.S. at 257.

[7]*Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001)(quoting *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cir. 1945)).

[8]*See Anderson,* 477 U.S. at 248.

[9]*See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712-13 (5th Cir. 1994).

Court must consider all evidence in the light most favorable to the nonmoving party.[10]   In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy.[11]

*Facts--Plaintiff*

At the time of the events made the basis of this case in June 2008, plaintiff Burns was incarcerated at the Mineral Wells Pre-Parole Transfer facility in Mineral Wells, Texas. (Burns A-1,¶ 1.) Just before 7:45 p.m. on June 5, 2008, Burns was attacked by an unknown number of his fellow inmates.   He was kicked, hit, and repeatedly beaten about his head and face with a sock that contained a metal lock. (Burns A-1, ¶ 19.)   Mineral Wells staff arrived a the location of the incident, dorm 756, room 304, at 7:47 p.m., where Burns was found in a pool of blood. (Burns A, "Incident Report," at 1.) After initial examination by Mineral Wells medical staff,  Burns was taken by helicopter to Harris Methodist Hospital in Fort Worth, Texas, and was in the intensive care unit for several days. (*Id.* at 1-2.) Burns was diagnosed with a closed-head injury, loss of consciousness, left orbital fracture, left mandible fracture, left brow laceration, and left optic nerve injury. (*Id.* at 2; Exhibit E.) The initial investigation revealed that inmates

---

[10]*See Matshshita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *National Ass'n,* 40 F.3d at 713.

[11]*Little v. liquid Air Corp.,* 37 F.3d 1069, 1075 (1994)(en banc).

Michael McDowell and Lanny Keeton were involved in the attack on Burns; but several other inmates were interviewed, and all of those inmates were placed in transient housing for further investigation. (Burns A, "Incident Report," at 1-2.) Although the Parker County District Attorney's Office referred the case to a Special Prosecution Unit of the State of Texas for possible prosecution, as of April 16, 2010, no prosecution had taken place because the Office of Inspector General ("OIG") had still not completed an investigation of this 2008 incident. (Exhibits B-D.)

Burns had a prison job at the Mineral Wells facility as a warehouse clerk. (Burns's Deposition, at 47.) According to Burns's deposition testimony, while working in the warehouse at about 10:00 a.m. on the morning of June 5, 2008, Burns's supervisor, Crystal Austin, informed him that a black inmate had thrown a bag over a fence to a white inmate. (*Id.* at 48.) Defendant Knoop was called to the warehouse to investigate the incident, and interviewed Burns and the other inmates working in the warehouse. Burns contends that he told Knoop that he didn't see anything, and that Knoop, after visiting privately with Austin and two other officials, left the warehouse. (*Id.* at 48-49.) About noon that day, Burns left the warehouse to go to a doctor's appointment, and was confronted by Knoop in an area next to a large field "where a lot of gang members hang out at all the time." Burns alleges Knoop began questioning him and he says he told Knoop he did not know anything, and did not see anything. (*Id.* at 50-51.) Burns alleges that one of the inmates

then yelled at them saying "Sergeant Knoop, you need to stop trying to make him a snitch."[12] (*Id.* at 51.) Burns alleges the following comments were then made:

> Sergeant Knoop stated that, "Leave him alone. Don't worry what about I'm doing. If I want him to be a snitch, he'll be my snitch." And I told him, I said, "Well, I--I have to go." I said, " I need to speak to Assistant Warden McKennon because right now your getting me in a situation where I can actually get jumped on, and I don't--I don't like that." And he say, "Well, you going to tell me what's going on--or what you saw." And I told you [sic], "I'm not going to talk to you about it--this anymore because I haven't seen anything." And so I just walked off. And he said, "If you walk away from me, I'm going to have you locked up." I said, "Well, you might as well lock me up because I'm--I'm not going to tell you something I don't know."

(*Id.* at 51-52.)

Burns says he then went to see a consulting physician in another area of the unit, told him about his concerns about being labeled a snitch, and of his desire to speak to the Assistant Warden, but he says the doctor told him to go back to the warehouse and inform Austin. (*Id.* at 53.) Burns alleges he then went back to the warehouse and informed Austin what Knoop had done, whereupon she initially tried to contact Warden Phillips, but when the warden was unavailable, she told Burns not to worry about it. (*Id.* at 54.) Burns says Austin then called other officers into the warehouse office saying "Y'all need to come in here, I need to let y'all know

---

[12]Later in the deposition, Burns testified that a snitch is a "person who informs staff members or officers about the actions of other inmates, especially if they're illegal actions, as far as like having cell phones, drugs, cigarettes, alcohol. If--if you go and--and tell someone-- tell a staff member something like that, then--then you're--you're labeled as a snitch, and it can have some really dire consequences as far as some of the inmates in there." (*Id.* at 57.)

what -- what Sergeant Knoop just did to Burns when he was out there about the incident." (*Id.* at 55.) Burns says he informed his fellow warehouse workers about what Knoop had done, but otherwise continued to work in the warehouse until 6:00 p.m.. Defendant Knoop then came to the warehouse to shake down Burns and the other warehouse workers before they were allowed to return to their dorm. Burns and Knoop did not speak. (*Id.* at 61.) After Burns was allowed to walk back to his dorm, he contends that Austin walked up form behind him and said "Well, just be careful, and if you have a problem, just let one of the officers know." (Id. at 61.)

In his affidavit filed with the amended response to the summary-judgment motions, Burns alleges that on June 5, 2008, outside his dorm, defendant Knoop questioned him about the inmate throwing the package over a fence, saying "You tell me now who threw the package over the fence and who picked it up." (Burns A-1, ¶ 3.) Burns alleges Knoop sought such information in the presence of numerous other inmates as if Burns was a prison "snitch." (*Id.* ¶ 2.) Burns contends that Knoop repeatedly asked him about the incident in front of other inmates, and told Burns that he "knew that I had seen the package come over the fence and who picked it up and that I better tell him or [Knoop] would 'tear my house up' meaning [Knoop] would vindictively search my living area." (*Id.* ¶ 5.) Burns alleges he repeatedly denied having any knowledge of the incident, asked Knoop to stop making him out as a "snitch," and asked Knoop to stop "communicating in this way in front of other

inmates because I feared that doing so would place me in
substantial risk of physical harm." (*Id.* ¶ 6.) Burns alleges that
other inmates, having heard Knoop's statements, threatened him in
Knoop's presence by saying he "better watch out because I [know]
what happens to snitches on the unit." When Burns then asked Knoop
about the other inmates' comments, Knoop allegedly responded "you
don't worry about them you worry about me, you'll either tell me
now or you'll tell me later when I come by your house." (*Id.* at ¶¶
7-8.) According to Burns, numerous other prisoners then started
yelling that he was a snitch, and Knoop heard such statements. (*Id.*
¶ 9.) Burns says he again said to Knoop, "look what you've done,
you need to help me get out of this situation," but that Knoop
replied "worry about me, not them, now get to your house." (*Id.* ¶
10.)

According to his deposition, after Burns returned to his dorm
after work on June 5, 2008, defendant Carabajal stopped him in the
hallway, and asked him about having heard from other officers that
he had given information about another incident relating to one of
his roommates having a cell phone. (Burns Deposition at 62.) Burns
alleges Carabajal asked him about this out loud in the presence of
other inmates, including inmates that had overheard his
conversation with Knoop. Burns alleges the other inmates then said:

> "Okay, you are a snitch," you know. "Ms.Carabajal, you
> need to tell–you need to get this snitch out of our
> building before he gets beat up." And Ms. Carabajal said,
> "Well, I don't want to see nobody get beat up.
> Y'all–y'all wait till I leave before y'all beat him up or

do anything," and she just walked downstairs.

(*Id.* at 63.) In his summary-judgment affidavit, Burns alleges more specifically that Carabajal stated that other inmates heard her say to Burns that "you know you told them where the cell phone was at." (Burns Affidavit Exhibit A-1, ¶ 14.)  He also alleges he said to Carabajal, "why are you doing this to me?" and that several inmates said "you snitching around here? You know what will happen to your ass if you're telling it around here." (Exhibit A-1, ¶ 15.)  Burns alleges in his affidavit that after other inmates made such comments, he asked Carabajal to call security, but that she instead stated, "y'all do what you want, just don't involve me," and ""I don't want to [sic] nobody to get beat up." (Exhibit A-1, ¶18.)  He alleges that within a half hour he was jumped by other prisoners. (Exhibit A-1, ¶ 18.)

Burns lived in building 756, room 304 on the third floor. (Burns Deposition, at 58.) He testified that after the conversation with Carabajal on the second floor of the dormitory building, he went back to his room and was getting ready to take a shower when both the doors to his room came open and several other inmates started coming into his room and asked him about the incidents with Knoop and Carabajal. (*Id.* at 64.) Burns recognized several inmates, including inmates Nicholas Bustamante, Johnny Epps, Roger Saldana, Lanny Keeton, and one of his roommates, Lonnie Jackson. (*Id.* at 65-66.) Burns saw Johnny Epps place a lock into a sock. (*Id.* at 66-

67.) Burns alleges the inmates started grabbing him, held him down, and took turns beating him in the face with the lock. (*Id.* at 66.) Burns then passed out. (*Id.* at 67.)

*Defendants' Facts*

Mineral Wells unit warehouse clerk Crystal S. Austin states in her affidavit that she was working with inmate Burns and another offender on June 4, 2008, when, about 5:00 p.m., she witnessed a black inmate throw a bag over the central fence to a white inmate on the other side of the fence. (Austin Affidavit Appx. 28, ¶ 6.) Austin states she also informed the unit's central command center and Captain Thomas Murphy about the incident by the fence. After that, Burns told Austin that he also saw the incident by the fence and that it was inmate McDowell that had thrown the bag over the fence. (Appx. 28, ¶ 9.) Defendant Knoop then came to the warehouse to pat down or search the warehouse workers, including Burns, and Austin told Knoop what she observed regarding the fence incident. Knoop then searched and questioned each warehouse worker. Knoop's search of each inmate was in a restroom and Austin did not hear any conversations between Knoop and the inmates. (Appx. 28, ¶¶ 10-12.)

The following day, June 5, 2008, Austin states that Burns worked all day with her in the warehouse. Austin alleges that at 4:50 p.m. on June 5th, Burns told her that on the previous evening of June 4, inmate McDowell and other inmates came to Burns's dorm room to talk to him and tell him that they thought that Burns had told officers that McDowell was the one to have thrown the bag over

the central fence. (Appx. 29, ¶ 19.) Austin says that she then asked Burns if he feared for his safety or wanted her to seek protection for him, but that Burns declined, saying "that he was 'okay' and that 'it was not a problem.' He told me that he did not believe that he needed protection." (Appx. ¶ 20.) Austin says that after she closed the warehouse, she walked with Burns to the outside gate and again asked him if he wanted her to seek protection on his behalf. Austin says Burns again told her that he did not need or want protection. (Appx., ¶ 21.) Austin states that later that day she prepared an "Employee/Civilian Incident Statement," and she attaches a copy of both the handwritten and typed versions of that report[13]. That report states:

> At approx. 4:50 p.m. on 6/5/2008 at the warehouse building 768, offender Burns, Carl stated to me that on 6/4/08 offender McDowell and some friends had come to his room looking for him. They thought that he had told on McDowell. I asked offender Burns, Carl, if he needed for me to tell someone. Offender Burns stated that it was okay and was not a problem. He stated that they thought he had told that offender McDowell had thrown something over the fence. On 6/4/08 I was at the warehouse window when I noticed an unidentified black offender throwing clear trash bag over the fence to an unidentified white offender. I called monitors and notified them of what was taking place. Cpt Murphy then called me to ask what exactly happened. Offender Burns told me that it was offender McDowell that had thrown it over.

(Appx., ¶¶ 31-32.)

Knoop states in his affidavit that he did not see Burns at all on June 5, 2008, and only later that evening learned that Burns had

_____

[13]Although Austin dated her signature on the handwritten version on June 6, 2008, the typed version dated June 6, 2008, shows her signature as being provided on June 5, 2008. (Appx. at 31, 32.)

been assaulted by other offenders on that date. (Knoop Affidavit , Appx. 35, ¶¶ 22-23.) Rather, Knoop states that while working at the Mineral Wells unit on June 4, 2008, at approximately 5 p.m., the captain on duty instructed him to go to the warehouse to search the warehouse workers and to investigate a report made by Crystal Austin about an inmate having thrown a bag over the central fence. (Appx. 33-34, ¶ 6.) Knoop searched each warehouse worker, including Burns, in a closed room in which only Knoop and the offender were present. (Appx. 34, ¶ 7.) Knoop states that in response to his inquiry to Burns about whether he had seen an offender throw a bag over the fence, Burns told him "that the segregation porter threw the bag over the fence." (Appx. 34, ¶ 8.) Knoop alleges he then asked Burns if he wanted to be removed from the offender population, consistent with his "normal practice to ask offenders that provided information to me about other offenders if they needed protection." Knoop says that Burns did not believe he needed protection. (Appx. 34, ¶ 9.) Knoop says he only questioned Burns in a closed room in the warehouse outside the presence of other offenders, and "never questioned Offender Burns about the incident in any other location." (Appx. 34, ¶ 11.)

Knoop says he never heard other inmates call Burns a snitch and he never labeled Burns a snitch. (Appx. 34, ¶¶ 13-14.) Knoop does not believe that Burns was in substantial risk of serious harm after his questioning of Burns about the bag-at-the-fence incident. (Appx. ¶ 15.) Knoop states that he also questioned the other inmate who had worked in the warehouse, and that inmate also reported that

the segregation porter had thrown the bag over the fence. (Appx. 34, ¶ 16.) Knoop then released Burns to return to his dorm, and although he saw Burns again at the time of the evening count, they did not speak to each other. (Appx. 35, ¶ 21.)

Defendant Chastity L. Carabajal, a correctional officer at the Mineral Wells facility, states in her affidavit that she did not work at the Mineral Wells facility on either June 4, 2008, or June 5, 2008. (Carabajal Affidavit, Appx. 38, ¶¶ 4, 10.) Carabajal states that she never had a conversation with Burns about another inmate's illegal possession of a cell phone, and did not have such a conversation with Burns on June 5, 2008. (Appx. 38, ¶ 5.) Carabajal also states that she never called Burns a snitch and never heard any offender call him a snitch. (Appx. 39, ¶ 9.)

Defendant Carabajal has also provided the affidavit of Mineral Wells employee records custodian Desiree Zabinsky, that an attached Time Card for Chastity Carabajal for the period of June 1, 2008, through June 28, 2008, was a business record kept in the usual course of business at Mineral Wells. (Zabinsky Affidavit, Appx. 37, ¶ 3.) That record shows that Chastity Carabajal did not work on either June 4 or June 5, 2008, as she did not record any hours for either of those dates. (Appx. 36.)

*Analysis*

"[T]he treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[14] It is well established that prison officials have a constitutional duty under the Eighth Amendment to protect prisoners from violence at the hands of their fellow inmates.[15] Being violently assaulted in prison is simply not "part of the penalty that criminal offenders pay for their offenses against society."[16] An inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to an inmate's safety.[17]

Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm.[18] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[19] In this context, an officer's awareness of the risk is evaluated subjectively:

> [A] prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane conditions

---

[14]*Adames v. Perez,* 331 F.3d 508, 512 (5th Cir. 2003)(quoting *Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir. 2002)(citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)).

[15]*Longoria v. Texas,* 473 F.3d 586, 592 (5th Cir. 2006)(citing *Farmer,* 511 U.S. at 832-33)).

[16]*Farmer,* 511 U.S. at 834 (citing *Rhodes* [*v. Chapman*], 452 U.S. 337, 347 (1981)).

[17]*Longoria,* 473 F.3d at 592 (citing *Farmer,* 511 U.S. at 834.)

[18]*Adames,* 331 F.3d at 512 (citing *Farmer,* 511 U.S. at 834).

[19]*Id.* (citing *Farmer,* 511 U.S. at 837).

of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.[20]

Whether a prison official had knowledge of a substantial risk to inmate safety is a question of fact.[21] In order to prove that an official is subjectively aware of a such a risk to inmate safety, a plaintiff inmate need not produce direct evidence of the official's knowledge.[22] A plaintiff can use circumstantial evidence to show that the official must have known about the risk.[23]

In order to establish a genuine dispute as to material facts, non-moving-party Burns must "'go beyond the pleadings,' and by affidavits or other competent summary judgment evidence cite 'specific facts' that show there is a genuine issue for trial."[24] Burns cannot defeat summary judgment "with conclusory allegations, unsubstantiated assertions or 'only a scintilla of evidence.'"[25]

*Defendant Knoop*

---

[20]*Farmer,* 511 U.S. at 837.

[21]*Longoria,* 473 F.3d at 595.

[22]*Adames,* 331 F.3d at 512.

[23]*See Hope v. Pelzer,* 536 U.S. 730,737 (2002)("we may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious"); *Farmer,* 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]").

[24]*See Bustos v. Martini Club Inc.,* 599 F.3d 458, 468 (5th Cir. 2010)(quoting *Celotex,* 477 U.S. at 324)).

[25]*See Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007)(internal citations omitted).

Burns has provided his affidavit, a copy of his complete deposition testimony, and numerous records related to his medical care and post-assault investigation, as evidence in response to the summary-judgment motion. Burns alleges in both his affidavit and in his deposition testimony that defendant Knoop questioned him about the bag-thrown-over-the-fence incident in front of other inmates. Burns alleges that even after other inmates told Knoop "to stop trying to make [Burns] a snitch," Knoop continued to ask Burns about the incident, and even told other inmates "if I want him to be a snitch, he'll be my snitch." Burns also alleges that Knoop threatened Burns in front of other inmates if Burns failed to provide him the information he sought. Burns goes on to allege that he advised Knoop that Knoop's questioning of him in front of other inmates could place him in "substantial risk of physical harm," but that Knoop told him not to worry about the other inmates. Burns also alleges that when other inmates verbally threatened him in the presence of Knoop, including some inmates' actually yelling that Burns was a "snitch," Knoop refused to immediately help him get away from the inmates in his dorm where the attack subsequently took place.

The evidence provided by the defendants contradicts Burns's facts. Defendants have presented evidence that the incident in which an inmate threw a bag over a fence took place on June 4. Defendants have presented evidence to show that Burns was

questioned not on June 5, but instead on June 4. Defendants have presented evidence that Burns was questioned by Knoop only in a private room, outside and away from the presence of any other inmates. Defendants have also presented evidence that Knoop never questioned Burns outside of the warehouse environment. Defendants have also presented evidence that Burns was confronted by other inmates on June 4 but declined to be separated. These factual disputes are material to the resolution of whether Knoop was aware that Burns was believed to be a snitch by his fellow inmates, and what response Knoop provided to such information.

Defendant Knoop contends in his motion for summary judgment, however, that even assuming the factual allegations of Burns are taken as true, Burns cannot demonstrate Knoop acted with deliberate indifference because Burns did not, prior to the assault, identify the inmates who threatened him, and has not shown that these same offenders who witnessed his being labeled a snitch were actually involved in the attack. Defendant Knoop cites another case from this district, *Blake v. Berkebile,*[26] for the proposition that "[a] prisoner's general claim that he was threatened, [that] he reported the threat to prison officials without providing them sufficient details to act on, and that he was later assaulted, is not sufficient to proceed to trial on a failure to protect claim."[27]

---

[26]No.3:07-CV-1001-M, 2010 WL 1236398,at *5 (N.D.Tex. March 2, 1010), *rep and rec. adopt'd,* 2010 WL 1254651 (N.D.Tex. Mar. 30, 2010)(Lynn, J.).

[27]*Id.* at *5.

But *Blake v. Berkebile* involves an inmate's claim of an attack by gang members, not an inmate who had been labeled as a snitch.[28] Many of the other cases relied upon by defendant share similar distinguishing deficiencies.[29]

Rather, there is case law applying the Eighth Amendment failure-to-protect analysis to cases of an inmate-on-inmate assault involving one inmate's being labeled as a "snitch." "Courts have long recognized that being labeled a 'snitch' in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment."[30] Since *Farmer v. Brennan* clarified that the deliberate-indifference standard requires subjective knowledge of a substantial risk of harm and expressly rejected a purely objective test,[31] two circuits have held that a defendant prison official's labeling of an inmate as a "snitch" satisfies *Farmer* and constitutes deliberate indifference.[32]

_____

[28]*Id.* at *1.

[29]*See McCullough v. Quarterman,* No. H-06-3974, 2008 WL 5061512, at *12 (S.D. Tex. Nov. 24, 2008); *Flores v Dretke,* No. 7:06-CV-183-O, 2008 WL 4414531, at *1 (N.D.Tex. Sep. 30, 2008)(O'Connor, J.); *Hurley v. Blevins,* No. Civ. A. 6:04-CV-368, 2005 WL 997317, at *11 (E.D.Tex. March 28, 2005), *report an rec. adopt'd,* (May 10, 2005).

[30]*David v. Hill,* 401 F.Supp. 2d 749, 756-67 (S.D. Tex.2005)(citing *United States v. Henderson,* 565 F.2d 900, 905 (5th Cir. 1978)("the life of a 'snitch' in a penitentiary is not very healthy")(other citations omitted).

[31]*Farmer,* 511 U.S. at 838 ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

[32]*Irving v. Dormire,* 519 F.3d 441, 451 (8th Cir. 2008)("[W]e conclude that, given the clear weight of authority in the circuits that have ruled on the question, [officer] Brigance was on fair notice that to falsely label an inmate

The United States Court of Appeals for the Fifth Circuit has long

"recognized the danger involved when a prison informer's identity

is revealed,"[33] and that

> When officials *are aware* of a danger to an inmate's
> health and safety, however, as appears to be the case
> when an inmate cooperates with an official prison
> investigation, it does violate the constitutional
> proscription against cruel and unusual punishment to fail
> to afford that inmate reasonable protection.[34]

More recently, in two decisions of the Fifth Circuit arising

from instances in which the plaintiff was a "snitch," *Longoria v.

Texas* and *Adames v. Perez,* resolution of the cases turned not only

on whether there was sufficient evidence that the defendant prison

officials knew the plaintiff was an informant, but also on whether

there was evidence that the prison officials knew that the inmate's

status as an informant had been revealed to other inmates.[35]

---

a snitch is to unreasonably subject that inmate to the threat of a substantial
risk of serious harm at the hands of his fellow inmates"); *Benefield v. McDowall,*
241 F.3d 1267, 1271 ("In *Northington* [*v. Marin,* 102 F.3d 1564, 1567 (10th Cir.
1996)], we specifically held that labeling an inmate a snitch satisfies the
deliberate indifference standard, and constitutes deliberate indifference to the
safety of that inmate.")

[33]*Smith v. Rabalais,* 659 F.2d 539, 546 n.19 (5th Cir. 1981), *cert. den'd,*
455 U.S. 992 (1982).

[34]*Gullatte v. Potts,* 654 F.2d 1007, 1012 (5th Cir. 1981)(emphasis added)
(directing a remand to the district court in order to determine, under the then-
applicable objective standard, whether the prison official Nagle "knew or should
have known" the likelihood of injury to a snitch transferred onto to the unit.)

[35]*Longoria,* 473 F.3d at 594-95 (noting that as to defendant Stafford,
although he knew plaintiff Longoria was an informant, there was no evidence he
knew the assaulting inmates were aware Longoria was an informant; and as to
defendants Hudson and Johnson, although they knew Longoria was an informant,
there was not sufficient evidence they were aware Longoria sought protection);
*Adames,* 331 f.3d at 514-15 (although inmate Adames, a snitch, demonstrated
defendant Crites knew he was a prison gang informant, Adames failed to provide
evidence that Crites told anyone else about the information provided.)

Another district court in this circuit, in resolving a similar motion for summary judgment sought by defendant prison officials arising from a set of facts remarkably similar to those alleged here, determined that *Longoria* and *Adames* together provide the applicable standards:

> In *Adames,* 331 F.3d at 514, the Fifth Circuit stated that in order to show there was a substantial risk to his safety, an inmate-plaintiff must show other inmates knew or believed the plaintiff was a snitch. To show deliberate indifference on the part of a prison official, the plaintiff must show the prison official was aware of facts that could lead him to infer other inmates knew or believed the plaintiff was a snitch. *Adames,* 331 F.3d at 514. The plaintiff must also show the prison official failed to respond reasonably to the threat to the plaintiff's safety. No liability exists if an official reasonably responded to a known substantial risk, even if the harm was ultimately not averted. *Longoria,* 473 F.23d 586, 594 (5th Cir. 2006).[36]

In reviewing Burns's factual allegations under these applicable standards, Burns has stated that other inmates knew or believed that he was a snitch, and that he was at substantial risk to his safety from his fellow inmates. Burns has also provided factual evidence that Knoop was aware of the fact that his fellow inmates knew or believed Burns was a snitch, and that inmates had verbally threatened Burns on the belief that he was a snitch. Burns has also provided factual allegations that Knoop failed to respond reasonably to the threat to his safety, as Burns has alleged that he expressly asked Knoop to help get him out of the situation, and

---

[36]*Geoghagan v. Wilkinson,* CA No. 06-2331-A, 2009 WL 703232, at *5 (W.D. La. March 17, 2009).

Knoop refused to assist him.

Therefore, under the applicable law, there are genuine disputes of material fact which preclude summary judgment as to defendant Knoop concerning whether other inmates knew or believed that Burns was a snitch, whether Knoop was aware of facts that could lead him to infer other inmates knew or believed Burns was a snitch, and whether Knoop failed to respond reasonably to protect Burns from an attack upon him by other inmates. As such, defendant Knoop's motion for summary judgment must be denied.[37]

*Defendant Carabajal*

Burns also separately alleges that defendant Chastity Carabajal confronted him on June 5, 2008, and asked him to reveal information about another incident in the presence of other inmates. But Carabajal has provided an affidavit stating that she did not work and was not present at the Mineral Wells facility on June 4 or June 5, 2008. Furthermore, Carabajal has provided a business record of the Mineral Wells facility, a "Time Card" for Carabajal for the period of June 1 through June 28, 2008, which was made at or near the time reflected in that record. That time card shows that Carabajal was not at the Mineral Wells facility on either June 4 or June 5. The document is contemporaneous evidence

---

[37]*See generally Geoghagan,* 2009 WL 703232, at *5-6 (denying motion for summary judgment due to the presence of material fact disputes on issues of whether defendant prison officials knew plaintiff inmate had been labeled a snitch and whether they failed to respond reasonably to protect him from the attack by other inmates.)

that Carabajal was not working on the date of the events alleged in Burns's claims.

Summary judgment is appropriate when a plaintiff sues the wrong party.[38] As noted above, when the party moving for summary judgment carries her burden to show there is no genuine dispute of material fact, the nonmoving party must "produce evidence or designate specific facts showing the existence of a genuine issue for trial."[39] "Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment."[40] When Burns submitted his affidavit evidence in response to Carabajal's summary judgment motion, he did not rebut or contest the business record of the Mineral Wells facility showing Carabajal was not working on June 4 or June 5, 2008. Thus, Burns has not contested, with specific facts, the showing that Carabajal was not present on the dates of the complained of events and could not have committed the alleged conduct. Other courts reviewing motions for summary judgment where defendant prison officials presented record evidence that they were not working on the date of the plaintiff's alleged facts, and where plaintiff did not present controverting evidence, have granted

[38]*See Carver v. Liberty Mut. Ins. Co.,* 277 F.2d 105, 109 (5th Cir. 1960).

[39]*Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003)(quoting *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000)).

[40]*Flores v. Dretke,* No.7:06-CV-183-O, 2008 WL 4414531, at *3 (O'Connor, J.)(citing *Anderson,* 477 U.S. at 249-50).

summary judgment for the defendants.[41] Similarly in this case, Burns

has not specifically contested the evidence submitted by Carabajal

in support of her motion for summary judgment demonstrating that

she was not present and not involved in the alleged violation of

Burns's rights. Thus, Plaintiff has failed to show a genuine

dispute of material fact with respect to an essential element of

his claim against Carabajal and Carabajal's motion for summary

judgment must be granted.

*ORDER*

Therefore, the motion for summary judgment as to Kenneth L.

Knoop (doc. 35) is DENIED and the motion for summary judgment as to

Chastity L. Carabajal (doc. 35) is GRANTED. Plaintiff shall take

nothing on his claims against defendant Chastity L. Carabajal, and

such claims are DISMISSED WITH PREJUDICE.

SIGNED July 18, 2011.

*Terry R. Means*
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[41]*See Walker v. Boyd,* No.3:10-CV-536-M-BF, 2011 WL 1833014, at *3 (N.D.Tex. March 28, 2011)(Stickney, MJ.)(noting that Plaintiff had not contested the authenticity of Dallas County jail records showing that defendant Officer Tucker was not working on the date of the events alleged in the plaintiff's complaint), *rep. and rec. adopted by,* 2011 WL 1837594, at *1 (N.D.Tex. May 12, 2011)(Lynn, J); *Weather v. Cano,* 392 Fed. Appx. 339 (5th Cir. Aug. 26, 2010)(affirming district court's grant of summary judgment where Plaintiff did not contest the defendant's affidavit and personal calendar records showing that she was not working in the building where the events allegedly took place on date alleged in complaint).